## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ONOFRIO POSITANO,** | : | **Civil No. 3:16-CV-1570** |
| | : | |
| **Plaintiff,** | : | **(Judge Kosik)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **THERESA DALBALSO, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This case, which comes before us for a screening review following the transfer of this lawsuit from the United States District Court for the Eastern District of Pennsylvania, is a *pro se*, *in forma pauperis* civil lawsuit brought by Onofrio Positano, a state inmate, against six correctional officials. (Doc. 5.) In his complaint, Positano asserts claims of negligence as well as violations of the Americans with Disabilities Act, 42 U.S.C. §12101, et seq.  (ADA).

According to the well-pleaded facts in the complaint, Positano was incarcerated at the State Correctional Institution in Mahanoy. (Id.)  In May of 2016, Positano

applied for a job as a dog handler at the prison. One correctional defendant, J. Flores, a unit team counselor, later notified Positano that he was medically unfit for this position. (Id.) Positano's pleading sheds no further light on the nature of this medical impairment, but Flores' decision to deny Positano the opportunity to participate in this dog training program because he was medically unfit forms the gravamen of Positano's ADA claim. (Id.)

While Positano has identified Unite Team Counselor Flores as the person who notified him of this decision, the complaint goes on to name five other defendants. One of these defendants, Theresa DalBalso, is identified as the Superintendent at SCI Mahanoy, but is not otherwise referred to in the body of the complaint. Another defendant, Kim Minarchick, is described as a nurse in the prison, but her only alleged involvement in this matter was to reportedly question why Positano was denied the opportunity to participate in the dog handler program. As for the remaining three defendants, John Steinhart, Traci Jacobson and John Wetzel, these defendants are described as supervisory corrections officials who after-the-fact denied grievances lodged by Positano.

On the basis of these allegations, Positano seeks compensatory and punitive damages totaling $210,000 from each defendant, along with declaratory and injunctive relief. Positano has previously sought, and received, leave to proceed *in*

*forma pauperis* from the United States District Court for the Eastern District of Pennsylvania. However, having carefully reviewed this complaint, we conclude that the pleading fails, in a number of respects as described below, to state a claim upon which relief can be granted. Accordingly, for the reasons set forth below, it is recommended that a number of the claims set forth in this complaint be dismissed, and that Positano be directed to provide a more definite statement of his remaining claims.

## II.   Discussion

### A.   Legal Standards Governing Sufficiency of Civil Complaints

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis.* See 28 U.S.C. § 1915(e)(2)(B)(ii). Specifically, the Court must assess whether a *pro se* complaint fails to state a claim upon which relief may be granted, since Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted. This statutory text mirrors the language of Rule 12(b)(6) of the Federal

Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years.  Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a p[arty] to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... p[arty] can prove facts that the ... p[arty] has not

alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).  As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a party must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." <u>Id.</u> at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u>

In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> at 679.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 678.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations sufficient to raise the party's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The district court must accept all of the . . . well-pleaded facts as true, but may disregard any legal conclusions.  Second, a district court must then determine whether the facts alleged . . . are sufficient to show that the plaintiff has a "plausible claim for relief."  In other words, a complaint must do more than allege the p[arty's] entitlement to relief.  A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:  "First, the court must 'tak[e] note of the elements a p[arty] must plead to state a claim.'  Iqbal, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  Id. at 1950.  Finally, 'where there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

In this regard, one of the basic requisites for a civil complaint is that it must recites some essential facts tying the defendants to some alleged misconduct. This fundamental requirement is driven both by matters of principle, and by pragmatic considerations. As a matter of principle and practice, a basic factual recital is essential in a complaint because it is simply impossible without such averments to

properly assign individual responsibility to a particular defendant without some factual description of what has transpired. Therefore, it is incumbent upon a plaintiff to describe who he seeks to sue, and what these parties did that violated the plaintiff's rights. When a plaintiff fails in this basic responsibility, it is the duty of the court to dismiss his claims. See, e.g., Moss v. United States, 329 F. App'x 335 (3d Cir. 2009)(dismissing illegible complaint); Radin v. Jersey City Medical Center, 375 F. App'x 205 (3d Cir. 2010); Earnest v. Ling, 140 F. App'x 431 (3d Cir. 2005)(dismissing complaint where "complaint fails to clearly identify which parties [the plaintiff] seeks to sue"); Oneal v. U.S. Fed. Prob., CIV.A. 05-5509 (MLC), 2006 WL 758301 (D.N.J. Mar. 22, 2006)(dismissing complaint consisting of approximately 50 pages of mostly-illegible handwriting); Gearhart v. City of Philadelphia Police, CIV.A.06-0130, 2006 WL 446071 (E.D. Pa. Feb. 21, 2006) dismissing illegible complaint). Further, in order to satisfy the strictures of Rule 8, a complaint must also contain a coherent prayer for relief, demanding relief from a defendant that lies within the power of the defendant to provide. See Klein v. Pike Cnty. Comm'rs, CIV.A. 11-278, 2011 WL 6097734 (M.D. Pa. Dec. 6, 2011)(failure to articulate a prayer for relief compels dismissal); Snyder v. Snyder, 4:12-CV-105, 2012 WL 512003 (M.D. Pa. Jan. 24, 2012) report and recommendation adopted, 4:12-CV-105, 2012 WL 511993 (M.D. Pa. Feb. 15, 2012)(same).

Judged against these legal benchmarks, for the reasons set forth below, this complaint is fatally flawed in the following respects, and a number of the claims set forth in the complaint should be dismissed.

### B.   The Plaintiff's Complaint Fails to State a Claim Upon Which Relief Can be Granted In a Number of Respects

Applying these legal benchmarks, we find that in this case that the following claims set forth in the plaintiffs' *pro se* complaint are subject to dismissal for failure to state a claim upon which relief can be granted.

### 1.   Positano's Supervisory and Vicarious Liability Claims Fail

In this case Positano brings a claim under the Americans with Disabilities Act, 42 U.S.C. §12101.  The ADA has some application to prison programing.  As the United States Court of Appeals had observed in a correctional setting:  "To establish a violation of Title II of the ADA, an inmate must allege that:  (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.  See 42 U.S.C. § 12132."  Pierce v. Pitkins, 520 F. App'x 64, 67 (3d Cir. 2013).  See, e.g., Brown v. Deparlos, 492 F. App'x 211, 215 (3d Cir. 2012)(same); Brown v. Pennsylvania Dep't of Corr., 290 F. App'x 463, 467 (3d Cir. 2008).

In this case Positano has alleged in a bare-bones fashion that defendant Flores violated the ADA by wrongfully concluding that Positano was medically unfit to participate in a dog handler program.  While these allegations, if made in a more definite fashion, might support an ADA claim, Positano has named 5 other medical or supervisory defendants in his complaint.  One of these defendants, Theresa DalBalso, is identified as the Superintendent at SCI Mahanoy, but is not otherwise referred to in the body of the complaint.  Another defendant, Kim Minarchick, is described as a nurse in the prison, but her only alleged involvement in this matter was to reportedly question why Positano was denied the opportunity to participate in the dog handler program.  As for the remaining defendants, John Steinhart, Traci Jacobson and John Wetzel, these defendants are described as supervisory corrections officials who after-the-fact denied grievances lodged by Positano.

In our view the allegations with respect to these five defendants are legally insufficient, and compel dismissal of these defendants from this lawsuit.   In considering claims brought against officials arising out of alleged violations of federal law, the courts recognize that government officials may be exposed to liability only in certain, narrowly defined, circumstances.

At the outset, it is clear that such claims cannot be premised merely on the fact that the named defendants were prison supervisors when the incidents set forth in the

10

complaint occurred. Quite the contrary, to state a claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution or laws of the United States. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v. Thiboutot, 448 U.S. 1 (1980). Tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

Here, with respect to DalBalso, Positano does little more than name this supervisory official in the caption of the case, and then seek to hold that official personally liable based upon the official's supervisory status without making any specific factual allegations about the defendant in the body of this pleading. To the extent that Positano simply premises the liability of the defendant upon her

supervisory status without setting forth any further factual basis for a claim in the body of this pleading, this cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of the defendant.  Hudson v. City of McKeesport, 244 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case.)

Likewise, Positano's allegations concerning defendant Minarchick simply indicate that she questioned the decision to exclude him from the dog handler program.  Such conduct–the only conduct allegedly undertaken by defendant Minarchick–simply does not constitute personal involvement in wrongdoing through either actual participation or acquiescence.  Quite the contrary, Positano seems to allege that this defendant questioned and opposed the conduct at issue here.  Thus, defendant Minarchick's actions, as described by Positano, also do not give rise to civil liability.

Nor can Positano advance supervisory liability claims, like those leveled against defendants Wetzel, Jacobson and Steinhart, premised on the allegations that these officials did not after-the-fact act favorably upon his past grievances.  An inmate cannot sustain a claim against prison supervisors based solely upon assertions that officials failed to adequately investigate or respond to his past grievances. Inmates do not have a constitutional right to a prison grievance system.  Speight v.

Sims, 283 F. App'x 880 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). As the United States Court of Appeals for the Third Circuit observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system. The district court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); see also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures

13

do not give rise to a liberty interest protected by the Due Process Clause).

Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

Indeed, as to such claims, the United States Court of Appeals for the Third Circuit has held that summary dismissal is appropriate "because there is no apparent obligation for prison officials to investigate prison grievances. See Inmates of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir.1973)." Paluch v. Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011).

In sum, as presently drafted, the plaintiff's claims against these five defendants consist of little more than assertions of *respondeat superior* liability, coupled with dissatisfaction with the processing of this inmate's past grievances, assertions which as a matter of law do not suffice to state a constitutional tort claim. Therefore, these defendants are entitled to be dismissed from this case.

## 2.    The Plaintiff's Demand for a Specified Sum of Damages Should be Stricken

Further, we note that the Court should also strike the various claims for specific sums of unliquidated damages in the amount of $210,000 from this *pro se* complaint. In this regard, Rule 12 (f) of the Federal Rules of Civil Procedure imposes a duty on the Court to review pleadings and provides that the Court may upon its own initiative at any time order stricken from any pleading any immaterial matter.  Fed. R. Civ. P.

14

12(f).  Decisions regarding whether claims may be stricken from a complaint are properly presented to a United States Magistrate Judge for determination in the first instance.  Singh v. Superintending School Committee of the City of Portland, 593 F. Supp. 1315 (D. Me. 1984).  In this case, the plaintiff's various claims for specified amounts of unliquidated damages violate Local Rule 8.1 which provides, in part, that:

> The demand for judgment required in any pleading in any civil action pursuant to Fed.R.Civ.P.8(a)(3) may set forth generally that the party claiming damages is entitled to monetary relief *but shall not claim any specific sum where unliquidated damages are involved.*  The short plain statement of jurisdiction, required by Fed.R.Civ.P.8(a)(1), shall set forth any amounts needed to invoke the jurisdiction of the court but no other.

Local Rule 8.1 (emphasis added).

Since this prayer for relief violates Local Rule 8.1 by specifying particular amounts of unliquidated damages, these specific dollar claims should be stricken from the complaint without prejudice to the plaintiff arguing in any subsequent trial or hearing on the merits for any appropriate amount of damages supported by the evidence.

### 3.      Defendants Wetzel, DalBalso, Steinhart and Minarchick Should be Dismissed Without Prejudice

In sum, in its current form this complaint fails to state a claim against five of these  defendants upon which relief may be granted. While this screening merits analysis calls for dismissal of this action with respect to these five defendants, we

15

recommend that the plaintiff be given another, final opportunity to further litigate this matter by endeavoring to promptly file an amended complaint.  We recommend this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, <u>see</u> <u>Fletcher-Hardee Corp. v. Pote  Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004).  Accordingly, it is recommended that the Court provide the plaintiff with an opportunity to correct these deficiencies in the *pro se* complaint, by dismissing this deficient complaint with respect to these defendants at this time without prejudice to one final effort by the plaintiff to comply with the rules governing civil actions in federal court.

### 4.   Positano Should Be Required to Provide a More Definite Statement of His Claims Against Defendant Flores

As for defendant Flores, Positano has alleged in a bare-bones fashion that defendant Flores violated the ADA by wrongfully concluding that Positano was medically unfit to participate in a dog handler program.  Such allegations may satisfy the elements of an ADA claim which requires that:  "To establish a violation of Title II of the ADA, an inmate must allege that:  (1) he is a qualified individual with a

16

disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.  See 42 U.S.C. § 12132." Pierce v. Pitkins, 520 F. App'x 64, 67 (3d Cir. 2013).  However, Positano's spare pleading style may well defeat any reasoned response to these allegations by defendant Flores since Positano does not identify his medical condition, describe the disabling character of the condition, or explain how that disability formed the basis for his exclusion from some prison program.

Presented with these obstacles to an informed understanding of the plaintiff's remaining claims, we note that, when a plaintiff's complaint is unclear, the court may, *sua sponte,* order the plaintiffs to file a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure in order to clarify the plaintiffs' claims. See, e.g., Kyeame v. Buchheit, No. 1:07-CV-1239, 2011 WL 3651369, at *1 (M.D. Pa. Aug. 18, 2011); MFS, Inc. v. Twp. of South Annville, No. 1:05–CV–1371, 2006 WL 3254535, at *7 (M.D.Pa. Nov.9, 2006); see also Moore's Federal Practice, § 12.36 (Matthew Bender 3d ed.) ("Because of its potential usefulness ... courts will occasionally order a more definite statement *sua sponte*, which they have the freedom to do"); Fikes v. City of Daphne, 79 F.3d 1079, 1082–83 (11th Cir.1996) (finding that

a more definite statement can tighten a complaint and clarify which of several possible claims are being asserted).

In a case such as this, where the plaintiff's claims cannot be readily and clearly understood, Rule 12(e) of the Federal Rules of Civil Procedure provides, in part, that the court may order a party to prepare: "a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Further, under this rule "[i]f the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order." Fed. R. Civ. P., Rule 12(e).

Here, we find that this particular complaint aptly:

Highlight[s] the particular usefulness of the Rule 12(e) motion for a more definite statement. Under Rule 12(e), [the court may order] a more definite statement "[i]f a pleading ... is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed.R.Civ.P. 12(e). . . . . When a complaint fashioned under a notice pleading standard does not disclose the facts underlying a plaintiff's claim for relief, the defendant cannot reasonably be expected to frame a proper, fact-specific . . . defense. . . . . The Rule 12(e) motion for a more definite statement is perhaps the best procedural tool available to the defendant to obtain the factual basis underlying a plaintiff's claim for relief.

Thomas v. Independence Tp., 463 F.3d 285, 301 (3d Cir. 2006)

Given the legal and factual ambiguity of the plaintiff's ADA claim against defendant Flores, we believe that the plaintiff should be required to provide a more definite statement of this claim.  Therefore, it is also recommended that the plaintiff be directed pursuant to Rule 12(e) to submit a more definite statement of this claim.

### III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's complaint be dismissed with respect to the following defendants–defendants Wetzel, DalBalso, Steinhart, Jacobson and Minarchick–without prejudice to the plaintiff endeavoring to correct the defects cited in this report, provided that the plaintiff acts within 20 days of any dismissal order.

IT IS FURTHER RECOMMENDED that Positano be directed to file a more definite statement of any ADA claim against defendant Flores within 20 days of any order ruling upon this Report and Recommendation.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set

forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 17th day of August 2016.

_**S/Martin C.  Carlson**_
Martin C. Carlson
United States Magistrate Judge